UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROGERIO S. TAVARES, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-521S |
| | : | |
| ENTERPRISE RENT-A-CAR COMPANY | : | |
| OF RHODE ISLAND, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

Plaintiff Rogerio S. Tavares ("Tavares") claims discrimination by his former employer Defendant Enterprise Rent-A-Car Company of Rhode Island ("Enterprise") based on his national origin (Cape Verde), religion (Islam) and mental disability (depression and psychosis). Since filing his *pro se* complaint, he has persisted in hapless attempts to amend it, perseverated in propounding duplicative discovery and repetitive motions, and perpetuated *ad hominem* attacks on both a defense attorney and a Magistrate Judge of this Court. Throughout, he has steadfastly asserted his right to, and consistently received from this Court, lenient treatment based on his *pro se* status. The instant motion for sanctions was triggered by Enterprise's discovery of a public website (JustAnswer.com) that Plaintiff accessed to procure on-line legal advice from an attorney admitted in Texas regarding strategy and for assistance in drafting the discovery and filings that have resulted in extra work for the Court and imposed significant additional expense on Enterprise. Exacerbating matters are Tavares's false statements during his deposition and in representations to this Court that he had not obtained assistance of an attorney and that all of the suspected work product (which reflected the hand of a trained lawyer) was his own.

In a nutshell, Enterprise claims that Tavares, wrapped in the protective cloak of his *pro se* status, cherry-picked legal advice from an attorney not authorized to practice in Rhode Island or in this Court – ignoring counsel that certain tactics would be sanctionable and using the lawyer's work product to propound harassing discovery and file groundless motions.  And then, when asked whether he was using a lawyer, he lied to cover-up.  Enterprise contends that the lies are particularly egregious because they relate directly to the fraud Tavares perpetrated on the Court by feigning *pro se* status to gain an unfair advantage.  It also points to Tavares's groundless accusations against Magistrate Judge Lincoln D. Almond and its defense attorney as additional examples of the use of deception to achieve strategic litigation goals.  Enterprise's sanctions motion invokes Rules 26, 37 and 41 of the Federal Rules of Civil Procedure and this Court's inherent authority; it seeks costs and attorney's fees in addition to revocation of Tavares's *pro se* status and dismissal of the Amended Complaint.  Tavares counters that he has the right to represent himself, that he did not understand the on-line lawyer to be his attorney, that ghostwriting is not sanctionable misconduct by the client and that he did not commit perjury because he did not knowingly make a material false statement.  Styled as a Motion to Revoke Plaintiff's *Pro Se* Status and For Sanctions (ECF No. 62), Enterprise's sanctions motion has been referred to me for report and recommendation.  28 U.S.C. § 636(b)(1)(B).

After the sanctions motion was filed, Tavares filed a Motion for Extension of Time to Complete Discovery and Extend All Other Deadlines (ECF No. 76); it also has been referred to me, but for determination.  28 U.S.C. § 636(b)(1)(A).  The extension motion asks the Court to extend the fact discovery deadline thirty days after resolution of the sanctions motion so that Tavares can take depositions of Enterprise's employees and to push out the other deadlines correspondingly.

I find that Tavares's conduct was deceptive and abusive of the powerful tools available to a civil litigant, resulting in a significant burden on Enterprise and on this Court. Accordingly, I recommend that sanctions be imposed with the principal goal of recalibrating the scale by reducing the burden on Enterprise wrongly inflicted by Tavares's conduct at the same time that his substantive claims may proceed.

The reasoning follows.

## I.    FACTS

### A.    Background

The basic outline of the facts[1] undergirding Tavares's claim may be briefly stated. He went to work for Enterprise as a driver in April 2008. ECF No. 4-1 at 19. Over the course of his employment, at least twice, Tavares requested, but claims he did not receive, accommodation from Enterprise based his documented diagnoses of psychosis and depression. Id. at 26-28. He also claims that he was subjected to unwelcome sexual overtures by his female supervisor and derogatory comments about his mental illness, religious dress and religion, among other indignities. ECF No. 4 at 2. On November 3, 2011, while working, he was a passenger in a vehicle that stuck another car; he filed a worker's compensation claim. ECF Nos. 4 at 4;4-1 at 2-5. Then on November 9, 2011, he was in another Enterprise vehicle driven by a different co-worker. According to Tavares, he accused the co-worker of speeding, forced him to pull over, grabbed the car keys and left the car; the incident resulted in State Police intervention. Tavares was terminated on November 10, 2011. ECF No. 4 at 3-4.

Tavares's mental impairment plays a critical role in this case. It is pivotal to his claims against Enterprise, in that he alleges that Enterprise refused to provide him with requested

---

[1] This recitation of the facts at issue in the case is drawn from Tavares's Amended Complaint.

accommodations and ultimately terminated him because of his disability; in addition, he asserts that his damages are based in part on the adverse impact of Enterprise's conduct on his mental status. I find that it is also material to this Court's consideration of this sanctions motion in that it may affect his perception and therefore may relate to some of the conduct alleged to be sanctionable. I lay out these normally confidential matters openly because Tavares placed redacted copies of selected medical records in the public record by appending them to his Amended Complaint. The unredacted portions of these records establish that he suffers from major depressive disorder and psychotic disorder,[2] characterized (according to an October 2010 progress note by his psychiatrist) by feelings of "being constantly harassed, discriminated against, colleagues talking about him, and trying to instigate him, even feels police patrol cars are being sent to follow him on the road to bother him by connected people at work." ECF No. 4-1 at 29.

**B.     Facts Relevant to Sanction Motion**

**1.     Pre-Attorney Phase**

The relevant chronology begins on July 15, 2013, when Tavares initiated this suit with a complaint that required screening and analysis by the Court pursuant to 28 U.S.C. § 1915. Noting the importance of leniency to *pro se* litigants,[3] Magistrate Judge Almond prepared a

---

[2] Psychotic disorder is characterized by "gross distortion of reality, disturbances of language and communication, withdrawal from social interaction, and disorganization and fragmentation of thought, perception, and emotional reaction." Knox v. Astrue, 660 F. Supp. 2d 790, 795 n.4 (S.D. Tex. 2009). Psychotic disorders make it difficult for a person to perceive reality, deal with reality in an appropriate way, and make it difficult for the person to comprehend what he is doing and that what the person is doing is wrong. Sudberry v. Voorhies, No. 1:03-CV-537, 2008 WL 1905262, at *12 (S.D. Ohio Apr. 29, 2008); see Estate of Whitling v. United States, 99 F. Supp. 2d 636, 645 (W.D. Pa. 2000).

[3] From the filing of the initial complaint until the discovery that an attorney had been skulking in the background for several months, this Court, and particularly Magistrate Judge Almond, liberally complied with the mandate of our Circuit that it must indulge Tavares based on his status as a *pro se* litigant. Pomales v. Celulares Telefonica, Inc., 342 F.3d 44, 49-50 n.4 (1st Cir. 2003) (leniency for pro se litigants is appropriate); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) ("Our judicial system zealously guards the attempts of pro se litigants on their own behalf").

report and recommendation that laid out its deficiencies to be used as a guide to Tavares in repleading.[4]  ECF No. 3.  The result was the Amended Complaint, filed on July 25, 2013, which remains the operative pleading.  ECF No. 4.  At this early phase of the case and for the next seven months, there is no allegation that Tavares was getting assistance from an attorney; the quality of his filings suggests that he was not.

During this phase of the case, from July 2013 until February 2014, Tavares struggled, unable to amend the Amended Complaint, unable to draft discovery to obtain admissions of the facts he wanted to prove and potentially unable to protect his own mental health records from production to Enterprise.  For example, Tavares tried to amend in October 2013, by filing an unopposed motion that was granted by text order (ECF No. 10); however, the pleading (ECF No. 13) he actually filed was materially different from the proposed pleading and was promptly stricken.  Text Order of Jan. 14, 2014.  His next effort was a motion to amend filed on January 15, 2014 (ECF No. 21-1), which Enterprise opposed because he had not exhausted administrative remedies against three entities he sought to add as defendants.  The motion was denied.  Text Order of Mar. 17, 2014.  For discovery, Tavares propounded somewhat incoherent requests for admission, interrogatories and document requests and was unsatisfied with the results.  He filed two motions to compel; both were completely unsuccessful.  Text Orders of Dec. 18, 2013, Jan. 14, 2014.  Meanwhile, in October 2013, Enterprise propounded document requests seeking production of Tavares's mental health treatment records since 2007.  Despite having attached selected mental health records to his Amended Complaint, Tavares moved for a protective order

---

[4] Tavares accompanied his original complaint with a request for leave to proceed *in forma pauperis* ("IFP").  That motion was recommended for denial because the supporting affidavit was insufficient – for example, it listed a mortgage among his expenses, but no real estate among the assets.  After this deficiency was pointed out by the Court, Tavares paid the filing fee.  It should be noted that, during the hearing on the sanctions motion, I raised concerns about his veracity based on the mistaken impression that he had persisted in seeking and been granted IFP status.  With that error cured by a review of the docket, I do not find that there was any questionable conduct arising from the IFP application to be considered in connection with this sanctions motion.

to avoid being compelled to waive the privilege of confidentiality that normally protects such sensitive records. ECF No. 23.

### 2. **Attorney Phase**

At some point, presumably in early 2014, Tavares hit on the plan to go to JustAnswer.com for assistance with this case. JustAnswer.com connects users of the site to legal "experts" who are "verified" as available to provide "a sense of general principles of law" to questions posed by JustAnswer.com's paying customers; JustAnswer.com tells customers that its "experts" do not provide "legal advice."[5] ECF Nos. 64-2 at 2; 62-8 at 2. After a customer has been linked to a legal expert, the customer and the lawyer may communicate directly on the website (in publicly posted blog entries) about legal issues; if the customer asks for something extra, like legal research or the drafting of a document, the legal expert and the customer negotiate a price to pay for the work. While there is no record of Tavares's initial contact with the website, it is clear from blog postings[6] starting in February 2014 that Tavares was put in contact with an attorney named Zachary Norris who is admitted to practice in Texas.[7] After

---

[5] The JustAnswer.com terms of service state that use of JustAnswer.com does not constitute retention of an attorney and that no attorney-client relationship is created. ECF No. 64-2 at 2 ("Answers from Experts on JustAnswer are not substitutes for the advice of an attorney . . . The Expert . . . is not your attorney, and the response . . . is not legal advice").

[6] At the first hearing on Enterprise's motion for sanctions, Tavares denied that he wrote all of the JustAnswer.com blog entries attributed to him by the sanctions motion. To give him time to reconsider this response, and with emphasis on his duty of truthfulness to the tribunal, I issued a show cause order; ultimately, Tavares admitted that he is the author of all the JustAnswer.com blog entries appended to the sanctions motion. ECF No. 72 at 7.

[7] A few words are required on the conduct of Attorney Norris. He provided Tavares with what is plainly legal advice in exchange for payment, raising the specter of a violation of R.I. Gen. Laws § 11-27-1, *et seq.* (prohibits practice of law and acceptance of fees for legal services except by persons duly admitted to the bar of Rhode Island); see R.I. Gen. Laws § 11-27-14 (violation constitutes misdemeanor punishable by imprisonment for up to one year and fines or both). In addition, he has plainly engaged in a practice colloquially known as "ghostwriting," which is legal writing researched and prepared by an attorney who has not entered an appearance in a case that is filed by a *pro se* litigant over the litigant's signature. The propriety of this practice has been widely debated; the issue is currently pending before the Rhode Island Supreme Court. Discover Bank v. Obrien-Auty, 2013 WL 300888 (R.I. Super. Ct. Jan. 17, 2013); HSBC Bank Nevada, N.A v. Cournoyer, 2013 WL 300887 (R.I. Super. Ct. Jan. 17, 2013); Card v. Pichette, 2012 WL 3113460 (R.I. Super. Ct. July 26, 2012); appeals consolidated, Nos. 2013-157, 2013-156, 2012-272 (R.I.). I reject the notion that Tavares should be sanctioned for unwittingly accessing the legal services

months of frustration, unable to get his complaint amended and unable to get the discovery he wanted, in late February 2014, Tavares began extensive consultations with Attorney Norris about this case.

### i. Persistent Attempts to Amend Complaint

The first public consultation[8] between Attorney Norris and Tavares focused on Tavares's ongoing effort to amend the Amended Complaint and particularly his desire to add additional defendants. Attorney Norris provided research and coached Tavares on how to argue his previously filed motion to amend, including how to emphasize a First Circuit case because it will "bind the court." ECF No. 62-6 at 61. Specifically noting Tavares's *pro se* status, but also noting that Tavares had not exhausted administrative remedies among other reasons, Magistrate Judge Almond denied the motion; afterwards, Tavares complained to Attorney Norris that it was "beyond belief that your hard work was [not accepted]." ECF No. 62-9 at 2. When Tavares asked for help in trying again (the third time), Attorney Norris advised "there is no real legal reason to add the other Defendants into the case . . . my humble opinion here is that you should . . . not use any further time or resources in trying to add in other Defendants;" he also pointed out that Tavares would be filing a motion that the Court had already denied. ECF Nos. 62-9 at 3; 62-10 at 5. In what would become a pattern, Tavares chose to ignore this aspect of Attorney Norris's advice. Instead, he took extensive legal analysis written by Attorney Norris, inserted it into what would be his third motion to amend, attached a proposed second amended complaint

---

available on Just Answer.com; in any event, Enterprise does not argue that he should be. Whether Attorney Norris and JustAnswer.com should be brought to the attention of the Rhode Island Unauthorized Practice of Law Committee is beyond the scope of this report and recommendation. See R.I. Gen. Laws § 11-27-19.

[8] The communications between Tavares and Attorney Norris referenced in this report and recommendation were posted on the public blog operated by JustAnswer.com. It is not known whether Tavares obtained advice from Attorney Norris out of the public eye. It must be noted that these communications, which have all the trapping of confidential attorney-client communications, were posted in a public forum, thereby waiving any attorney-client privilege that otherwise might have protected their confidentiality.

drafted by Attorney Norris and, on April 1, 2014, signed and filed the new motion with a heading

and signature block indicating that he was acting "*pro se*." ECF Nos. 31-1 at 7-9; 62-6 at 34-35.

Enterprise filed its third objection. The Court treated the new motion as an appeal of Magistrate

Judge Almond's decision and District Judge Smith denied it. ECF No. 47. With Attorney

Norris's assistance, Tavares tried a fourth time, filing a "Motion for Oral Hearing" that asked for

leave to file the same second amended complaint; like its predecessors, this was signed by

Tavares with a heading and signature that represented that he was acting *pro se*. ECF No. 51.

Again Enterprise objected; this time, the Court treated it as a motion for reconsideration and

denied it. See Text Order of July 28, 2014.

> ii.     Persistent Propounding of Discovery and Making
>         Motions to Compel

The second major topic on which Tavares consulted Attorney Norris was his frustration

with discovery. Over several months, Tavares used Attorney Norris to draft discovery that

duplicated what had already been propounded and a motion to compel that replicated prior

unsuccessful motions. Tavares began by seeking Attorney Norris's assistance in drafting a

motion to compel responses to requests for admission; Attorney Norris responded, "[y]ou should

not file a new motion on the same subject, as this could result in a frivolous pleading finding and

a sanction against you by the court." ECF No. 62-10 at 7. Despite this advice, which Tavares

ignored, Attorney Norris assisted Tavares in drafting new requests that Tavares served in May

and August 2014. ECF No. 62-16 at 4-6. They cover much the same ground as the original set.[9]

Dissatisfied with Enterprise's denials, Tavares ultimately filed a motion to compel (ECF No. 63).

---

[9] For example, the first set asked Enterprise to "admit that Plaintiff reported all issues to the Human Resources by E-mail," while the Norris drafts asked it to "[a]dmit that on June 22, 2011, Plaintiff reported discriminatory remarks . . . based on his religion," and "admit that on June 22, 2011, Plaintiff informed Enterprise in writing that he had experienced religious discrimination." Compare ECF No. 62-20 at 2 (original requests), with ECF No. 62-18 at 4, 62-19 at 4 (second and third requests).

Enterprise filed its objection, asserting essentially the same argument, and this Court denied the motion for the precise same reason that the same motion had been denied months before. Compare ECF No. 74 at 5-6 (motion to compel admissions denied because it is not appropriate method to test propriety of denials), with Text Order of December 18, 2013 (motion to compel admissions denied because responses satisfy requirements of Fed. R. Civ. P. 36(a)(4)).[10]

### iii. Persistent Attempts to Avoid Production of Mental Health Records

The third topic of legal advice from Attorney Norris related to Tavares's hapless attempts to protect his mental health records from disclosure. After the Court denied his first motion for protective order on March 17, 2014, Plaintiff contacted Attorney Norris for assistance. ECF Nos. 23; 62-9 at 5-6. Attorney Norris advised him that resistance to producing the records would be futile: "[t]he big issue here . . . [is] you have put your mental condition at issue . . . by claiming mental anguish and then providing mental health records to prove your point. By putting this at issue, you make the past mental health records potentially relevant." ECF No. 62-9 at 8. When Tavares persisted, Attorney Norris told Tavares that he would not assist because the motion for protective order had already been denied. ECF No. 62-9 at 8-9, 10-12. Ignoring this advice, on March 20, 2014, Tavares filed his second motion for protective order (ECF No. 30) on the same grounds; he signed it, included the assertion of his *pro se* status in the heading and below his signature, and specifically argued for the right to be protected by the "greater leeway to pro se litigants." ECF No. 30-1 at 2-3. Enterprise filed another objection. The Court treated it as an appeal of the Magistrate Judge's decision and denied it – "[t]his Court agrees with Judge Almond's denial of Plaintiff's Motion for Protective Order." ECF No. 47 at 2. Enterprise

---

[10] Tavares filed this Brairean motion to compel (ECF No. 63) after he had apparently severed his relationship with Attorney Norris. The aspect of the motion to compel focused on Enterprise's denials of his requests to admit is discussed here because Attorney Norris specifically advised against bringing it. The other aspects of this motion are discussed *infra*.

next subpoenaed mental health records from providers; after consulting Attorney Norris, Tavares moved to quash. ECF No. 42. Unaware of the lawyer advising Tavares in the background, the Court held a lengthy hearing, carefully explained to Tavares what Attorney Norris had already explained (that the records must be produced because he had placed his mental health in issue), and denied the motion. ECF Nos. 52, 61.

### iv. "Groundless and Reckless" Accusations Against Magistrate Judge

Tavares's attack on Magistrate Judge Almond was launched in his motion to quash filed on April 29, 2014. ECF No. 42-1 at 5. Tavares expressed his suspicions about the Magistrate Judge (who by then had ruled against him several times) in February 2014, when he told Attorney Norris, "I don't trust the judge," and stated, falsely, "The GM of Enterprise RI is buddy buddy with this judge and it makes it really hard on me and anyone who tries to sue Enterprise." ECF No. 62-9 at 4. To address his concern about the Magistrate Judge, Tavares devised a strategy to improperly influence him, which he revealed to Attorney Norris on March 17, 2014: "I hope by filing the second one [another motion for protective order], I believe he will be on my side, the fact that today I spoke with one of the judge's childhood friends to speak to him about my matter." ECF No. 62-9 at 9. When this tactic did not produce the desired results, Tavares shifted course and accused Magistrate Judge Almond of bias because he was "certain" that one of Judge Almond's childhood friends was intervening to help Enterprise "on a daily basis." ECF No. 42-1 at 5. At the ensuing hearing, Magistrate Judge Almond (unaware of Tavares's communications about him with Attorney Norris) found the allegations to be "completely unsupported and reckless" and based on "rank speculation." ECF No. 56 at 15, 20. Nevertheless, he recused himself, finding that Tavares appeared candid in expressing his perception of bias. ECF No. 56 at 21-22.

### 3.     <u>Post-Attorney Phase</u>

Tavares stopped communicating with Attorney Norris, at least on the public blog, in May 2014.[11] The rest of his troublesome conduct occurred after May 2014; it includes potential perjury, perseveration in prosecuting motions and an *ad hominem* attack on the lawyer representing Enterprise.

#### i.     <u>Lies at Deposition to Cover-Up Use of Attorney</u>

The allegation that Tavares lied is based the following testimony from his August 20, 2014, deposition:

> Q.     [Plaintiff's answer to Interrogatory No. 7] says 'On October 23, 2013 plaintiff inquired legal advise from [a Rhode Island attorney] in reference to this matter' . . . and I'm not asking about any discussions you had with [him] . . . but you consulted with [him] with regard to this matter? That's a yes or no question.
> A.     Yes.
> Q.     Okay, have you consulted with any other attorneys other than [that Rhode Island attorney] with regard to this matter?
> A.     No. Never.
>
> \*   \*   \*
>
> Q.     Showing you, sir, [the proposed second amended complaint, ECF No. 31-2]. Is this a document that you prepared and submitted to the Federal District Court?
> A.     Yes, sir.
> Q.     Did anyone help you prepare this document?
> A.     No. This document specifically prepared by me doing research on my own, yes.

ECF No. 62-21 at 3-4.

---

[11] The last JustAnswer.com blog entry between Plaintiff and Attorney Norris is dated May 13, 2014. <u>See</u> ECF No. 62-7 at 11. Plaintiff claims he stopped communicating with Attorney Norris after that. However, defense counsel represented at the October 28, 2014, sanctions hearing that he had recently received a call from Attorney Norris's law partner/wife (also a classmate of defense counsel at law school) asking about the motion for sanctions, which was not filed until September 19, 2014. ECF No. 73 at 16-17. Similarly, Tavares's opposition to the motion for sanctions, filed long after the last public consultation with Attorney Norris, is suspiciously polished and articulate, though Tavares adamantly denied that he got help from any attorney in drafting it. <u>See</u> ECF Nos. 64, 64-1.

By this false testimony, Tavares attempted to cover-up his many consultations with Attorney Norris who had "help[ed Tavares] . . . prepare" the proposed second amended complaint; in Attorney Norris's own words, he made revisions to the second amended complaint by "conduct[ing] legal research and revis[ing] your Complaint." ECF Nos. 62-10 at 6, 11; 62-11 at 2-5. Tavares counters that the JustAnswer.com terms of service state that Attorney Norris was providing "general information" and "not legal advice," ECF Nos. 64-2 at 2; 62-9 at 6, so that he had not "consulted" Attorney Norris. This justification is belied by his communications with Attorney Norris; he specifically asked for "legal advice." ECF No. 62-9 at 7. Tavares also contends that the questions were vague and compound, and he should have been afforded the right to review the deposition transcript under Fed. R. Civ. P. 30(e) to make "amendment changes." ECF No. 73 at 23. He blames defense counsel and the stenographer because they refused to provide him with the transcript. I find nothing vague or compound about the operative questions, so that his attempt to shift the blame for his own deception to defense counsel and the stenographer is an utter non-starter. In any event, it is Tavares's responsibility to obtain a copy of his own transcript and pay the full cost, and there is no evidence Tavares requested review of the transcript before his deposition was completed. See Kilgore v. Mandeville, 2010 WL 2557702, at *13 (E.D. Cal. June 21, 2010); Agrizap, Inc. v. Woodstream Corp., 232 F.R.D. 491, 493 (E.D. Pa. 2006).

ii.        Persistent Accusation Against Enterprise's Attorney

Tavares's personal attack on Enterprise's attorney arose during a discovery hearing held on June 24, 2014, when he accused counsel of seeking to gain an advantage in the litigation by bullying, shouting, using foul language and chasing him from the courthouse following a prior hearing; Tavares claimed the incident occurred in the presence of and was witnessed by court

security officers.  ECF No. 61 at 30-32.  This Court directed Tavares to bring his accusation to the Rhode Island Supreme Court's Office of Disciplinary Counsel and informed him that the Court will not act unless disciplinary counsel takes action.  ECF No. 61 at 35.  On August 19, 2014, disciplinary counsel advised Tavares by letter that no action would be taken and that "this concludes our inquiry into this matter."  Hr'g Ex. A, Nov. 3, 2014 (ECF No. 67).  Instead of dropping it, Tavares persisted; on September 24, 2014, he moved for sanctions based on the same "evil-minded intimidation tactics."  ECF No. 63-1 at 22-24.  After the Court denied the motion, reminding Tavares at a hearing on October 28, 2014, that the matter is closed based on disciplinary counsel's termination of his inquiry without any adverse action, ECF No. 73 at 38-39, Tavares persisted, asserting the accusation at the next hearing on November 3, 2014.  ECF No. 74 at 5-6, 25-26.

iii.        <u>Persistent Pursuit of Discovery</u>

Tavares's final motion to compel (ECF No. 63)[12] was dealt with over two hearings in October and November 2014.  Among other matters, wielding hyperbolic accusations that Enterprise was intentionally concealing documents, it sought production of specific documents that Enterprise had already provided; it sought documents that Enterprise had already responded do not exist; and it sought materials palpably lacking any relevancy to any of the claims or defenses in the matter.  <u>See</u> ECF No. 74 at 3-8 (Court outlines obvious deficits in motion to compel).  At the first hearing, after granting Tavares's motion to continue the hearing on the motion to compel, the Court observed that the motion has already been "reviewed extensively" in preparation for the hearing, and that "[i]f that motion had been filed by an attorney it would be tossed out.  I wouldn't even consider it.  Because of your pro se status . . . I reviewed it

---

[12] This is the same motion to compel discussed above.  <u>See</u> n.10 *supra*.

13

extensively." ECF No. 73 at 5. Echoing Enterprise's Fed. R. Civ. P. 11(c)(2) letter asking Tavares to withdraw the motion,[13] the Court suggested that Tavares should reconsider whether he wished to proceed. ECF No. 73 at 6, 43. Despite this warning, Tavares remained pertinacious and did not withdraw any of his arguments. At the next hearing, the Court observed that Tavares appeared to be using "the power of these discovery tools to abuse the defendant and to engage in improper inquiry into the personal lives of other people." ECF No. 74 at 7. When Tavares insisted that the termination of an Enterprise employee was connected to his claims and refused to accept the representation of Enterprise's lawyer that her termination was entirely unrelated, the Court ordered Enterprise to submit the record *in camera*, warning Tavares that if the *in camera* review was a waste of time for the Court and for Enterprise, his insistence would be taken into account in considering whether to impose sanctions. ECF No. 74 at 44. Tavares persisted, the document was submitted and the *in camera* review confirmed the accuracy of Enterprise's representation. Ultimately, the motion to compel yielded almost nothing[14] except a substantial effort by the Court and by Enterprise. See ECF No. 68 (order denying almost all of motion to compel).

## II.     STANDARD OF REVIEW

### A.     Enterprise's Motions for Sanctions

Pursuant to their inherent authority, district courts are empowered to do whatever is necessary to deter abuse of the judicial process and fraud on the court, including dismissal of a case and an award of attorney's fees. Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991); Aoude

---

[13] Enterprise has not filed a separate motion invoking Fed. R. Civ. P. 11(c) based on Tavares's refusal to withdraw this motion to compel. It has represented that it may yet do so. ECF No. 74 at 28.

[14] As a result of colloquy during the lengthy hearing on the motion to compel, a single document (that Tavares had not requested) was identified as potentially containing relevant information. It was ordered to be produced; in addition, Enterprise agreed to search again for time punch cards for specific days identified by Tavares. ECF No. 68.

v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989). Rules 26 and 41 of the Federal Rules of Civil Procedure are variations of the same theme – they are manifestations "of the ancient and inherent power of a trial judge to achieve the orderly and expeditious disposition of cases." See Vazquez-Rijos v. Anhang, 654 F.3d 122, 127 n.12 (1st Cir. 2011); Phinney v. Paulshock, 181 F.R.D. 185, 205 n.46 (D.N.H. 1998). By contrast, Fed. R. Civ. P. 37(a)(5) can lead to attorney's fees and cost shifting but not dismissal. See Wesley v. Scharff, No. CIV.A. 09-285J, 2011 WL 5878053, at *2 (W.D. Pa. Sept. 26, 2011) (Fed. R. Civ. P. 26(g), 41(b) and the inherent power allow for dismissal). Importantly, Rule 26(g) requires all parties, including *pro se* litigants, to certify that their discovery requests, responses and objections are, to "the best of the person's knowledge, information and belief formed after a reasonable inquiry . . . consistent with these rules . . . not interposed for an improper purpose . . . [and] neither unreasonable nor unduly burdensome or expensive;" improper certification can subject a party to sanctions, including dismissal and attorney's fees. Fed. R. Civ. P. 26(g); Laukus v. Rio Brands, Inc., 292 F.R.D. 485, 514 (N.D. Ohio 2013). Under Fed. R. Civ. P. 41(b), a plaintiff's failure to comply "with these rules [of civil procedure]" can lead to dismissal with prejudice. See Wesley, 2011 WL 5878053, at *2.

Two other rules not relied on by Enterprise are potentially relevant. First, Fed. R. Civ. P. 11(a)-(b) requires in relevant part that every pleading and written motion filed in a case be signed, by the party personally if he is *pro se*, and that the signature constitutes a certification to the court that the motion is not being presented to harass or needlessly increase the cost of litigation, that the legal contentions are warranted by law and that the factual contentions either have evidentiary support or are warranted in the evidence. However, a litigant may not move for Fed. R. Civ. P. 11 sanctions until it has complied with the steps set out in Fed. R. Civ. P. 11(c).

Enterprise has initiated this process – it sent Tavares a notice pursuant to Fed. R. Civ. P. 11(c)(2) of its intent to seek sanctions unless his final motion to compel (ECF No. 63) was withdrawn and has made clear that it may yet make a Fed. R. Civ. P. 11 motion; similarly, at the first hearing on the motion for sanctions, the Court outlined the reasons why that motion to compel appeared to be without merit and invited Tavares to withdraw it. ECF No. 73 at 5-6, 14-15. Tavares did not withdraw the motion. The other rule that is pertinent is Fed. R. Civ. P. 26(b)(2)(C), which permits the court, on its own in the exercise of its case management function, to limit the frequency or extent of discovery when a party has had ample opportunity to obtain the information sought and the burden of the proposed discovery outweighs its likely benefit.

When a defendant seeks dismissal and attorney's fees and costs for fraud on the court, the court's inherent power and the Rules of Civil Procedure effectively deploy the same standard. See Vazquez-Rijos, 654 F.3d at 127 n.12. Fraud on the court is a basis for dismissing a claim, or imposing lesser sanctions, when a party has set in motion "some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Hull v. Municipality of San Juan, 356 F.3d 98, 102 (1st Cir. 2004). Fraud on the court "knows no stylistic boundaries" and can take many forms. Aoude, 892 F.2d at 1118. It must be proven by clear and convincing evidence. Hull, 356 F.3d at 101 (citing Aoude, 892 F.2d at 1118).

In sanctioning fraud on the court, lesser remedies than dismissal should be considered when reasonably available, but how much consideration is given depends on the circumstances. Id. at 103. Because dismissal sounds "the death knell of the lawsuit," such strong medicine should be reserved for instances where the defaulting party's misconduct is correspondingly

egregious.  <u>Aoude</u>, 892 F.2d at 1118.  In calibrating the scales, the court should carefully balance the policy favoring adjudication on the merits with competing policies such as the need to maintain institutional integrity and the desirability of deterring future misconduct.  <u>Id.</u> Consideration should also be given to the prejudice to the opposing party and egregiousness of the conduct, which can include inquiry into the legitimacy of the party's excuse, repetition of the conduct and mitigating circumstances.  <u>See</u> <u>Starski v. Kirzhnev</u>, 682 F.3d 51, 55 (1st Cir. 2012); <u>cf.</u> <u>Vallejo v. Santini-Padilla</u>, 607 F.3d 1, 8 (1st Cir. 2010); <u>Malloy v. WM Specialty Mortg. LLC</u>, 512 F.3d 23, 26 (1st Cir. 2008).  At bottom, dismissal is an extreme remedy, and should not lightly be engaged.  <u>Aoude</u>, 892 F.2d at 1118.  When the Court settles for the lesser sanction of attorney's fees, it should rest on a finding that the party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  <u>Chambers</u>, 501 U.S. at 45-46.

**B.**     **Tavares's Motion to Extend Discovery Deadlines**

A pretrial scheduling order can be modified "only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Rule 16's good cause standard "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent," although prejudice remains relevant.  <u>Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.</u>, 714 F.3d 62, 64 (1st Cir. 2013); <u>O'Connell v. Hyatt Hotels of P.R.</u>, 357 F.3d 152, 155 (1st Cir. 2004). In addition, the court should consider factors such as the history of the litigation, the proponent's need for the discovery, the justification (if any) for a late request, and the opponent's ability to overcome its adverse effects.  <u>See</u> <u>Insight Tech., Inc. v. SureFire, LLC</u>, No. 04-CV-74-JD, 2008 WL 4526185, at *1 (D.N.H. Oct. 2, 2008) (citing <u>Macaulay v. Anas</u>, 321 F.3d 45, 51 (1st Cir. 2003)).

**III.**     **PROPOSED FINDINGS**

Based on the facts set out above, I find by clear and convincing evidence that Tavares has acted in bad faith, vexatiously, wantonly, or for oppressive reasons by engaging in the following conduct: (i) he marshaled legal advice to assist him in filing motions that he was aware (based on the advice of the attorney) would be sanctionable, while asking the Court to treat these meritless filings leniently based on his *pro se* status; (ii) he knowingly incorporated legal arguments that he knew to be futile and factual representations that he knew to be false into motions that he signed with an invocation of *pro se* status for the purpose of inducing the Court to treat him leniently; and (iii) he intentionally lied[15] during his deposition to cover-up this conduct. I further find that Enterprise's fees and costs to defend this case have increased significantly as a result of this misconduct. Finally, I find that Tavares has perseverated in continuing to press for inappropriate discovery and in making reckless and inappropriate *ad hominem* attacks on both Magistrate Judge Almond and on Enterprise's attorney, inflicting additional costs on Enterprise, and that there is a likelihood that such conduct will continue unless this Court intervenes to prevent it.

## IV. ANALYSIS

### A. Sanctions

Courts have consistently found that the sanction of dismissal is appropriate when misconduct directly impacts the core allegations of the complaint and prevents the defendant from presenting a defense. Aoude, 892 F.2d at 1118; see Jackson v. Murphy, 468 F. App'x 616, 618, 620 (7th Cir. 2012) (dismissing case brought by party who forged document, lied to court,

---

[15] I do not find that Tavares's conduct amounts to perjury in violation of 18 U.S.C. § 1621 (criminalizes the conduct of one who "having taken an oath before a competent . . . officer, . . . contrary to such oath states or subscribes any material matter which he does not believe to be true"). While there is no question that a false answer at a deposition may constitute perjury, United States v. Reveron Martinez, 836 F.2d 684, 690 (1st Cir. 1988), the requirement that the testimony be known by the witness to be "material" to the proceeding is not met here. At the time Tavares was asked the operative questions, Enterprise was not aware that he was using Attorney Norris so that the viability of his *pro se* status was not yet at issue. Further, these questions are totally unrelated to the merits of Tavares's claims of discrimination. See Grube v. Lau Indus., Inc., 257 F.3d 723, 731 (7th Cir. 2001).

and forced costly hearing by creating a factual dispute where none existed); Brown v. Oil States Skagit Smatco, 664 F.3d 71, 77-80 (5th Cir. 2011) (per curiam) (dismissal appropriate when plaintiff gave conflicting testimony on key aspect of case); Combs v. Rockwell Int'l Corp., 927 F.2d 486, 488-89 (9th Cir. 1991) (alteration of deposition testimony on key aspect of case warrants dismissal); Rodriguez v. M & M/Mars, No. 96 C 1231, 1997 WL 349989, at *2 (N.D. Ill. June 23, 1997) (concealing relevant information by perjury warrants dismissal).  In an employment discrimination case, dismissal has been deemed the appropriate sanction when the fraud on the court pertains directly to whether the employer acted for an improper purpose in its treatment of the employee.  See Pope v. Fed. Express Corp., 974 F.2d 982, 984 (8th Cir. 1992) (dismissal based on finding that manufactured evidence and perjured testimony going to the heart of sex discrimination claim).

Enterprise concedes that Tavares's lies and misrepresentations do not pertain directly to his allegations of discrimination.  It nevertheless argues that they taint the very core of the case because, unless deterred, he will continue to prevaricate, dissimulate and lie, which will permit him to resist summary judgment and manipulate the record at trial.  By evincing the willingness to lie under oath and to make misrepresentations to the Court to gain a litigation advantage, Enterprise contends that he has created an imbalance that only dismissal can cure.  These considerations are particularly acute here because the employee's credibility can be pivotal in an employment discrimination case.  Wolf v. Buss (Am.) Inc., 77 F.3d 914, 918 (7th Cir. 1996) (intent and credibility are crucial issues in employment discrimination cases).

The case law does not go as far as Enterprise posits – rather, cases involving false testimony in employment cases usually result in dismissal only when the lie relates directly to the substantive allegations in the case.  Brown, 664 F.3d at 77-80 (dismissal with prejudice of

employment claim is appropriate sanction when litigant committed perjury on pivotal reason why he was forced to resign); see Allen v. Chicago Transit Auth., 317 F.3d 696, 703 (7th Cir. 2003) (perjury on one topic does not warrant dismissal or discrediting of person's entire testimony as a matter of law); Starski v. Kirzhnev, No. 06-10157-DPW, 2011 WL 923499, at *10-11 (D. Mass. Mar. 15, 2011) (dismissal not appropriate when perjury does not go to heart of case). While serious, Tavares's cover-up of his reliance on legal assistance from Attorney Norris and his perseveration in pursuit of plainly abusive discovery and motions simply do not rise to the level of the conduct found in cases that deploy the court's power to dismiss. See, e.g., Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11 (1st Cir. 1985) (default entered for unexplained spoliation of evidence material to merits of defense and failure to appear at court-ordered hearing to explain); Reyes-Santiago v. JetBlue Airways Corp., 932 F. Supp. 2d 291, 301-03 (D.P.R. 2013) (defendant's deceptive withholding of highly relevant report justifies sanction of default). In analogous cases dealing with the use of a ghostwriter by a *pro se* litigant, courts may sanction the *attorney* for conduct that is disingenuous and affords the *pro se* an unwarranted advantage, yet the sanction of dismissal of the litigant's claim is neither considered nor imposed. See, e.g., Evangelist v. Green Tree Servicing, LLC, No. CIV. 12-15687, 2013 WL 2393142, at *4 (E.D. Mich. May 31, 2013) (court suspicious of ghostwriting but addresses case on merits); In re Brown, 354 B.R. 535, 545 (Bankr. N.D. Okla. 2006) (attorney, not litigant, sanctioned for ghostwriting); Johnson v. Bd. of Cnty. Comm'rs, 868 F. Supp. 1226, 1232 (D. Colo. 1994) (ghostwriting violates attorney's duty of candor), aff'd in part, disapproved in part, 85 F.3d 489 n.3 (10th Cir. 1996) (ghostwriting issue not appealed).

Enterprise also goes too far in its contention that Tavares's conduct has so distorted the litigation process as to leave it without an effective remedy to defend itself. To the contrary, the

lies, misrepresentations and plainly hyperbolic accusations that now litter this record provide Enterprise with ample and powerful fodder for cross examination. Lilly v. Virginia, 527 U.S. 116, 124 (1999) (cross-examination is the "greatest legal engine ever invented for the discovery of truth"). The ability of a litigant to uncover the truth by challenging the dissembling witness with leading questions that disclose testimonial and character weaknesses is at the root of our Anglo-American adversarial system. Jules Epstein, The Great Engine That Couldn't: Science, Mistaken Identifications, and the Limits of Cross-Examination, 36 Stetson L. Rev. 727, 727-28 (2007). Far from leaving Enterprise helpless, Tavares's misconduct has provided it with the tools to defend itself.

In addition, and mindful of the need to consider mitigating circumstances, Starski, 682 F.3d at 55, Vallejo, 607 F.3d at 8, I find that Tavares suffers from mental illness (psychotic disorder) that might affect his ability to perceive reality.[16] While he has not raised this condition as a justification for his conduct, I observe that it may have been a factor in some of his tactics, such as the attacks on Magistrate Judge Almond and the defense attorney and the persistent pursuit of motions already denied and discovery to which Enterprise already responded. His paranoid insistence that Enterprise has a "gang" that made his mental illness public is just one instance that illustrates the point.[17] See Roby v. Ctr. Cos., 884 F.2d 1393, at *5 (6th Cir. 1989) (per curiam) (while judges do not profess to be psychiatrists, they may look at conduct of a litigant with a psychiatric diagnosis and conclude "that we are dealing here with [more than] a

---

[16] See n.2, *supra*.

[17] During a hearing held on June 24, 2014, in arguing that his mental health records should not be produced to Enterprise, Tavares stated, "I believe that there has been some exposure to my record on the outside publicly . . . Enterprise and [its attorney], I'm sure they have – they have their own gang out there that these individuals – they have individuals, so-called intellects." ECF No. 61 at 26. When the Court pointed out that Tavares himself had placed his psychiatrist's letters and notes in the public record, and that he should not accuse Enterprise of doing what he had actually done to himself, he stated, "I agree." Id. at 27.

garden-variety bad-faith refusal to disclose information on discovery").  Other courts that have

dealt with similar challenges reason that it is generally inappropriate to sanction litigants with

dismissal for litigation tactics caused by mental illness.  See, e.g., Voltz v. Chrysler Grp. LLC,

No. 3:13 CV 2606, 2014 WL 5393572, at *12 (N.D. Ohio Oct. 22, 2014) ("a litigant's mental

illness weighs against certain discovery sanctions, like entry of default"); Nowia-Pahlavi v.

Haverty Furniture Cos., Inc., No. 608-CV-36, 2009 WL 1393475, at *4 (M.D. Fla. May 18,

2009) (party should not be sanctioned for mental illness but there must be evidence that illness

affects litigant's judgment or ability to prosecute); Tilton v. McGraw-Hill Cos., Inc., No. C06-

0098, 2007 WL 777523, at *7 (W.D. Wash. Mar. 9, 2007) (dismissal not warranted based on

party's emotional difficulties).

      In all, balancing the strong preference for adjudication on the merits against the need to

maintain institutional integrity and eliminate prejudice to Enterprise, I conclude that the sanction

of dismissal is not warranted as long as lesser sanctions are feasible.  Aoude, 892 F.2d at 1118;

see Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000) (courts must guard against foreclosure of

pro se claims due to technical defects).  Nevertheless, Tavares's conduct is egregious so the

penalty must be severe enough to deter its repetition.  Hull, 356 at 103.  In considering lesser

sanctions, the Court must also evaluate whether an award of attorney's fees and costs, standing

alone, will be ineffective because Tavares lacks the financial ability to meet such an

obligation.[18]  Brown, 664 F.3d at 78 (lesser monetary sanction not appropriate where litigant

who lied was proceeding IFP and could not afford to pay attorney's fees).  Further, Tavares's

mental difficulties, while a mitigating factor, do not totally excuse his conduct from sanctions;

rather, the Court must tailor the sanction to eliminate what is wrongful while allowing the rest of

---

[18] While he is not proceeding IFP, Tavares initially sought leave to do so and has reminded this Court that he is
limited in his ability to pay.  ECF No. 64-1 at 7.

the case to survive. <u>Tilton</u>, 2007 WL 777523, at *7-8 (when misconduct related to mental illness yet litigant knew it was wrong, court imposes preclusion on issue directly related to the conduct but not outright dismissal).

Based on the foregoing, I recommend sanctions that go at least part of the way to reimbursing Enterprise for its increased litigation fees and costs, that place even greater emphasis on Tavares's duty of truthfulness to the tribunal and that stop the bleeding by eliminating Tavares's free access to the discovery tools normally available to a litigant. Specifically, I recommend, first, that Tavares be ordered explicitly to certify to the truthfulness of every writing that he signs in this case, including that he may not label himself as *pro se* unless that is true. Second, I recommend that Tavares be precluded from taking any additional fact or expert discovery without leave of Court, which will not be lightly granted. Third, I recommend that Enterprise be awarded its costs and attorney's fees in connection with the investigation and prosecution of this motion for sanctions and in connection with defending each of the motions that Attorney Norris or this Court advised Tavares that he should not file or press because it had already been denied or was without merit (ECF Nos. 30, 31, 42, 51 and 63).[19] Mindful of the limits on Tavares's capacity to pay, I recommend that any monetary award that Tavares may hereafter recover against Enterprise shall be reduced by the unpaid amount of these fees and costs and that only the reduced amount may be used to calculate statutory interest or to determine whether he is entitled to recover costs. To the extent that the Court adopts this recommendation, I further recommend that Enterprise be directed to file within seven days following adoption a bill for its fees and expenses and that Tavares may have seven days to file a response. Finally, I recommend that Tavares be strongly cautioned that if he continues to engage in similar conduct

---

[19] Presumably, this recommendation, if adopted by the Court, will moot Enterprise's planned Fed. R. Civ. P. 11 motion based on Tavares's failure to withdraw his last motion to compel (ECF No. 63).

in the future, the Court may revisit this determination and again consider the remedy of dismissal.

**B.      Scheduling Order**

Tavares has moved to extend all of the deadlines set out in this Court's Pretrial Scheduling Order (ECF No. 57), by pushing out the close of fact discovery thirty days from the date of the Court's final decision on this sanctions motion, with corresponding extensions for the other deadlines (for example, the deadlines for expert disclosures and the filing of dispositive motions). ECF No. 76. Tavares filed the motion on November 25, 2014, before fact discovery closed on December 5, 2014; as grounds for the motion, Tavares notes that he "scheduled . . . depositions of Defendant and its employees" for September 29-30, 2014, and that he needs time to complete his responses to Enterprise's discovery. In light of his discovery violations, the Court should not afford Tavares carte blanche to take depositions. On the other hand, if this Court adopts my recommendation that the case should not be dismissed, the schedule governing its course will need to be reset. Accordingly, Tavares's motion to extend all of the deadlines in the Pretrial Scheduling Order by pushing out the close of discovery by thirty days after the resolution of the sanctions motion and moving the other deadlines correspondingly will be granted. However, during the remaining period when fact discovery is permissible, Tavares may pursue only such discovery as was properly noticed prior to the original close of fact discovery and only with leave of Court consistent with such limitations as the Court may set, while Enterprise may complete whatever discovery it chooses.

**V.      CONCLUSION**

Based on the foregoing, I recommend that Enterprise's motion for sanctions (ECF No. 62) be granted in part and denied in part and that sanctions be imposed as set forth above. Any

objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

Tavares's motion to extend discovery deadlines (ECF No. 76) will be granted, with the proviso that he may not initiate any new fact discovery but is limited to completing discovery noticed prior to the close of fact discovery and must seek leave of Court (which will not be lightly granted) before he may proceed with such discovery.

<u>/s/ Patricia A. Sullivan</u>
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 16, 2015